Justin A. Nelson *(pro hac vice forthcoming)*
Weston O'Black *(pro hac vice forthcoming)*
Daniel Wilson *(pro hac vice forthcoming)*
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
jnelson@susmangodfrey.com
woblack@susmangodfrey.com
dwilson@susmangodfrey.com

Rohit D. Nath (SBN 316062)
SUSMAN GODFREY L.L.P
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-2906
Telephone: (310) 789-3100
RNath@susmangodfrey.com

Matt Hartley *(pro hac vice forthcoming)*
Hartley Law PLLC
200 East Van Buren, Suite 300
Phoenix AZ 85004
Tel: 602.769.0999
matt.hartley@hartleylawusa.com

*Attorneys for Plaintiffs SW Media Holdings, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SW MEDIA HOLDINGS, INC. f/k/a SNAPWIRE MEDIA, INC. | Case No. _____ |
| Plaintiff, | |
| v. | **PLAINTIFF'S ORIGINAL COMPLAINT** |
| UNITED STATES INTERNAL REVENUE SERVICE; THE UNITED STATES OF AMERICA, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, SW Media Holdings, Inc. ("SW Media"), formerly known as Snapwire Media, Inc., files this lawsuit seeking a federal tax refund of $316,764.70 for its Employee Retention Credit for quarters one, two, and three of 2021. Plaintiff is entitled to the refund under the Coronavirus Aid, Relief, and Economic Security Act Pub. L No. 116-136 § 2301, 134 Stat. 281 (2020) ("CARES Act") and section 3134 of the Internal Revenue Code (I.R.C.) because the Plaintiff qualifies for the statutory test for a decline in gross receipts during quarters one, two, and three of 2021. *Id.* § 2301(c)(2); I.R.C. § 3134(c)(2)(A)(ii)(II).

Plaintiff demands a jury trial on all issues triable to a jury.

## NATURE OF THE CASE

1.  The federal government enacted the CARES Act in March 2020 to aid businesses and individuals in response to the unprecedented public health crisis caused by the COVID-19 pandemic. The CARES Act created the Employee Retention Credit ("ERC") for employers who continued to pay qualified wages to their employees during the height of the pandemic in 2020 and 2021.[1] The statute created a tax credit against applicable employment taxes for each calendar quarter in which a business was eligible. *See* I.R.C. § 3134(a).

2.  According to the U.S. Department of the Treasury, the department to which the IRS belongs, the CARES Act and Coronavirus Response and Consolidated Appropriations Act of 2021 "provided fast and direct economic assistance for American workers, families, small businesses, and industries."[2]

3.  Plaintiff, SW Media, qualified for, and applied for, a refund under the ERC program with the United States Internal Revenue Service ("IRS"). After a

---

[1] *See* Guidance under the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), as amended by § 206 and § 207 of the Taxpayer Certainty and Disaster Tax Relief Act (hereinafter the "Relief Act"), enacted as Division EE of the Consolidated Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 3038 (2020) (hereinafter, "Consolidated Appropriations Act"), and American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 8 (2021) (hereinafter, "American Rescue Plan Act") (providing extensions through January 1, 2022).

[2] U.S. Dep't of the Treasury, *About the CARES Act and the Consolidated Appropriations Act*, (last visited Aug. 19, 2024), https://home.treasury.gov/policy-issues/coronavirus/about-the-cares-act.

PLAINTIFF'S ORIGINAL COMPLAINT

lengthy delay, the IRS failed to process SW Media's claim for an ERC refund. On September 14, 2023, the IRS issued a moratorium on processing ERC claims, effectively disallowing timely submitted ERC claims without review.[3]

4.     SW Media brings this lawsuit to obtain the credit it is entitled to receive under the CARES Act.

**JURIDISCTION & VENUE**

5.     The Court has subject matter jurisdiction under 28 U.S.C. §§ 1340 and 1346, and under 26 U.S.C. (I.R.C.) § 7422.

6.     Venue is proper under 28 U.S.C. § 1391(e)(1) and § 1402 because Plaintiff maintains its principal place of business and/or principal office in this district in Santa Barbara, California and a substantial part of the events giving rise to this action occurred in this district.

**THE PARTIES**

**A.     Plaintiff**

7.     Plaintiff, SW Media, is a corporation organized in the State of Delaware with its principal place of business in the State of California.

8.     Snapwire Media Inc. (now known as SW Media Holdings, Inc.) was founded in 2012 by Chad Newell and Sky Gilbar as a platform to connect brands, publishers, and small businesses ("buyers") who were seeking images with photographers who could fulfill those requests. Buyers would post their requests, and photographers responded to these requests by submitting their photographs for consideration. Buyers would then choose their favorite submission and pay the winning photographer for their work. Shortly after the public launch, Snapwire Media Inc. launched its "2.0" version of the platform which allowed photographers to create portfolios and sell their images directly from their portfolios. In June of 2022, after a decade of success, certain of Snapwire Media Inc.'s assets were sold to

---

[3] IR-2023-169 (Sept. 14, 2023).

StudioNow. As a result of the acquisition, Snapwire Media Inc. was renamed SW Media Holdings, Inc.

**B.    Defendants**

9.    The United States of America is a defendant.

10.    The IRS is a bureau within the Executive Branch of the United States government organized within the Department of Treasury tasked with assessing and collecting internal revenue in the United States. The IRS is an agency within the meaning of 5 U.S.C. § 701(b)(1).

**BACKGROUND**

**A.    Congress drafts the CARES Act in response to the COVID-19 pandemic**

11.    In the beginning of 2020, COVID-19 swept through the United States and the federal, state, and local governments issued orders to stem the spread of the disease. Those orders had an expected side effect—they exacerbated the already substantial disruptions to the economy from the pandemic.[4]

12.    Congress prepared the CARES Act as an economic stimulus bill to mitigate the economic fallout from widespread business impairments and job losses, which was enacted into law in March of 2020

13.    The ERC program was a significant part of the CARES Act. The ERC program created a tax credit for employers who continued to pay their employees throughout the COVID-19 pandemic. *See* I.R.C. § 3134(c)(3); FS-2020-05 (May 2020); *see also* U.S. Dep't of the Treasury, *Emp. Retention Tax Credit: What You Need to Know*, (last visited Aug. 19, 2024), https://home.treasury.gov/system/files/136/Employee-Retention-Tax-Credit.pdf.

14.    The ERC program aimed to help employers retain their employees by reducing the financial burden on employers via the tax credit. By helping businesses maintain their employees, the ERC program intended to create significant benefits

---

[4] Exec. Ord. No. 14002, 86 Fed. Reg. 7229 (Jan. 22, 2021).

for the country, including lowering enrollments in public assistance programs—like Unemployment Insurance and Medicaid—by people who might lose their jobs.

15.     Congress wanted the IRS to widely broadcast the ERC program to American businesses, so they could claim its benefits. The IRS was instructed to conduct a public information campaign about the ERC program to encourage businesses to participate. Congress amended the CARES Act to require the IRS to work with the Small Business Administration (SBA) to disseminate information about the tax credit.[5]

**B.     The Employee Retention Credit**

16.     The original CARES Act, signed into law in March 2020, provided a tax credit equal to 50% of qualified wages paid to employees in the year 2020, up to a maximum of $10,000 of qualified wages per employee.

17.     In late 2020, Congress amended the CARES Act to increase the amount of the ERC and extend its duration. The amendment allowed eligible employers to claim a tax credit equal to 70% of qualified wages with a cap of $10,000 per employee of qualified wages for each calendar quarter.[6] This increased credit was extended to the first and second quarters of 2021, and eventually through the third quarter of 2021.[7]

[5] *See* Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (requiring government "outreach" to business by giving "notice about the credit allowed under this section and the requirements for eligibility to claim the claim"); *see also* U.S. Dep't of the Treasury, *Treasury Encourages Bus. Impacted by COVID-19 to Use Emp. Retention Credit* (Mar. 31, 2020), https://home.treasury.gov/news/press-releases/sm962.

[6] *See* The Relief Act, enacted as Division EE of the Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020); *see also* I.R.C. 3134(b)(1)(A–B); *see also* I.R.C. 3134 (b)(2) (citing § 3134(a), with respect to any calendar quarter shall not exceed the applicable employment taxes (reduced by any credits allowed under sections 3131 and 3132)).

[7] The Relief Act § 207 enacted as Division EE of the Consol. Appropriations Act of 2021 Pub. L. No. 116-260, 134 Stat. 1182 (2020) (modifying the cap to 70%); The American Rescue Plan Act Pub. L. No. 117-2, 135 Stat. 177 § 3134 (2021) (providing further relief of 70% of a cap of $10,000 for the third and fourth quarters of 2021); Infrastructure Inv. & Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (disallowing the ERC credit for the fourth quarter businesses unless they qualified as a start-up business).

4

18.    In sum, an eligible employer may claim a credit of up to $5,000 per employee for the year 2020 and up to $7,000 per employee for each qualifying quarter in 2021.

19.    Unless otherwise excepted, qualified wages are wages and compensation (subject to Social Security and Medicare taxes) paid by an eligible employer to eligible employees and include the eligible employer's qualified health plan expenses that were properly allocable to such wages.

20.    The ERC was terminated for most employers in the fourth quarter of 2021 by the Infrastructure Investment and Jobs Act ("Infrastructure Act").  *See* IR-2021-242 (Dec. 6, 2021). Under the Infrastructure Act, only a recovery startup business may claim the ERC in the fourth quarter of 2021. *Id.*

**C.    Qualifications to Claim the ERC**

21.    The ERC was available to businesses of many sizes, but the business generally had to meet at least one of two criteria for a given quarter: (1) a statutorily defined decline in the business's gross receipts when comparing an applicable quarter in 2020 or 2021 with the same quarter in 2019, or (2) the business was fully or partially suspended due to a governmental order during an applicable quarter in 2020 or 2021.

a.  Decline in Gross Receipts in 2020 or 2021

22.    A business qualifies as an "eligible employer" if it suffered a statutorily required reduction in gross receipts in a calendar quarter of 2020 or 2021, as compared the same calendar quarter in 2019. *See* CARES Act § 2301(c)(2)(B); I.R.C. § 3134(c)(2)(A)(ii)(II).

23.    A qualifying quarter for 2020 includes a quarter where the business's gross receipts were 50% less than the same quarter in 2019. *See* CARES Act § 2301(c)(2)(B). Once an eligible business has a qualifying quarter for 2020, each following quarter is also an eligible quarter, ending with the first calendar quarter

following a quarter in which the gross receipts exceed 80% of the gross receipts for the same calendar quarter in the prior year.[8]

24.    A qualifying quarter for 2021 includes a quarter where the business's gross receipts were 20% less than the same quarter in 2019. *See* I.R.C. § 3134(c)(2)(A).  For 2021, employers may elect into ERC qualification for a quarter by demonstrating a gross receipts reduction of more than 20% in the immediately preceding quarter. *See* I.R.C. § 3134(c)(2)(A) & (B); *see also* IRS Notice 2021-49; IRS Notice 2021; IRS Student Guide for COVID Credits & Deferrals for Employment Tax 3-45.

### b.    Full or Partial Suspension Due to Governmental Orders

25.    A business ***also*** qualifies as an "eligible employer" if it "is fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease of 2019 (COVID-19)." CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(ii)(I).

**D.    The IRS's Refusal to Apply the CARES Act and Its Moratorium**

26.    The IRS has decided not to follow the plain text of CARES Act.

27.    In September 2023, the IRS unilaterally announced it was suspending its review and processing of new ERC claims. *See* IR-2023-169 (Sept. 14, 2023). "During the ERC review period, the IRS continued to process claims received prior to September 2023. The agency processed 28,000 claims worth $2.2 billion and disallowed more than 14,000 claims worth more than $1 billion." *See* IR-2024-169

---

[8] IRS Notice 2021-20 (Mar. 1, 2021) ("Section 2301(c)(2)(B)(i) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts begins with the first calendar quarter beginning after December 31, 2019, for which gross receipts (within the meaning of section 448(c) of the Code) for the calendar quarter are less than 50 percent of gross receipts for the same calendar quarter in the prior year. Section 2301(c)(2)(B)(ii) of the CARES Act provides that the period during which an employer experiences a significant decline in gross receipts ends with the calendar quarter that follows the first calendar quarter beginning after a calendar quarter described in section 2301(c)(2)(B)(i) of the CARES Act for which gross receipts of the employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year.")

(June 20, 2024). The IRS originally suggested its moratorium would end, and processing would resume, at the beginning of 2024. The IRS did not end the moratorium in 2024. The IRS partially lifted the moratorium for cases filed before January 31, 2024, yet the IRS continues to refuse to adhere to the statute.

28.    The IRS has claimed that it continues to process claims filed before the moratorium began on September 14, 2023, but it has done so "at a greatly reduced speed." IR-2023-169 (June 20, 2024). In practice, the IRS has processed very few ERC claims since the moratorium began. The IRS has intentionally stalled the ERC program to such an extent that it has effectively suspended the program altogether.

29.    On June 20, 2024, the IRS issued a news release announcing plans to deny tens of thousands of allegedly improper, high-risk ERC claims while beginning to process "low-risk claims." *See* IR-2024-169 (June 20, 2024).

**E.    Plaintiff SW Media qualifies for the ERC under the CARES Act**

30.    Plaintiff qualifies for the ERC under the CARES Act because Plaintiff suffered a substantial decline of 44%, 68%, and 35% for Q1, Q2, and Q3 in 2021 as compared to the gross receipts for 2019.

31.    In 2019, SW Media employed fifteen full-time employees, allowing it to qualify as an eligible business for the ERC in 2021. As shown in the table below, SW Media experienced a significant decline in its gross receipts for quarters one, two, and three of 2021 when compared with its gross receipts for the corresponding quarters of 2019.

| Year | 2019 | 2021 |
|------|------|------|
| Q1 | $621,238.46 | $350,101.88 |
| Q2 | $1,143,112.50 | $367,689.75 |
| Q3 | $993,121.74 | $644,492.43 |

32.    In 2021, SW Media's gross receipts for its first quarter ("Q1") were $350,101.88 as compared to $621,238.46 for Q1 of 2019 showing a 44% decline in gross receipts.

33.    SW Media's Q2 and Q3 for 2021 are also qualifying quarters. SW Media's gross receipts for Q2 of 2021 were $367,689.75 as opposed to $1,143,112.50 in gross receipts for Q2 2019 resulting in a 68% decline in gross receipts. SW Media's gross receipts for Q3 2021 were $644,492.43 while its gross receipts for Q3 2019 were $993,121.74—making a decline in gross receipts of 35%.

## CLAIMS FOR RELIEF

## COUNT I: REFUND FOR GROSS-RECEIPTS-DECLINED

34.    Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 33 as if fully set forth herein.

35.    Plaintiff is entitled to a tax refund for ERCs for Q1, Q2, and Q3 of 2021 under the gross-receipts-declined test of the CARES Act.

36.    Plaintiff, SW Media, is an eligible employer under the CARES Act criteria for 2021 because it paid qualifying wages to 15 full-time employees in 2019, excluding owners and non-qualifying, employee relatives of the owners.

37.    Plaintiff satisfies the criteria for the gross-receipts-declined test for Q1, Q2, and Q3 of 2021 as shown below:

| Year | 2019 | 2021 |
|------|------|------|
| Q1 | $621,238.46 | $350,101.88 **(-44%)** |
| Q2 | $1,143,112.50 | $367,689.75 **(-68%)** |
| Q3 | $993,121.74 | $644,492.43 **(-35%)** |

38.    None of the qualifying wages described above were paid with payroll costs from the Paycheck Protection Program (PPP) loan forgiveness.

39.    Plaintiff made a timely and proper claim for the ERC with the IRS. The following list shows when Plaintiff filed its Form 941-X with the IRS for each qualifying quarter and the ERC it claimed for each quarter.

a.    The 941-X for Q1 of 2021 was filed on June 2, 2023, and it claimed an ERC in the amount of $146,311.90 for that quarter.

b.    The 941-X for Q2 of 2021 was filed on June 2, 2023, and it claimed an ERC in the amount of $107,452.80 for that quarter.

c.    The 941-X for Q3 of 2021 was filed on June 2, 2023, and it claimed an ERC in the amount of 63,000.00 for that quarter.

40.    The IRS has failed to process the Plaintiff's valid ERC claim, and, as a result, has not provided the statutorily required refund to Plaintiff.

41.    Under I.R.C. § 6611, the United States owes interest on the refund due to Plaintiff "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Plaintiff overpaid its taxes and is entitled to interest because the IRS has unilaterally refused to honor the credit owed to Plaintiff.

42.    Pursuant to I.R.C. § 7422, a refund suit for the recovery of income taxes can be commenced in District Court after a claim for refund has been filed with the Secretary. Under I.R.C. § 6532, no suit pursuant to I.R.C. § 7422 shall begin prior to the expiration of 6 months from the date of filing the claim for refund nor after the expiration of 2 years from the date the IRS notifies the taxpayer that its claim is disallowed.

## COUNT II: ATTORNEYS' FEES AND COSTS

43.    Plaintiffs incorporate and reallege paragraphs 1 through 46 above.

44.    Under I.R.C. § 7430(c)(4)(B), the United States must pay litigation and administrative costs because its position is not "substantially justified." The IRS created a self-imposed moratorium on processing ERC claims, and, as a result, has refused to process straightforward claims like those belonging to Plaintiff.

# PRAYER FOR RELIEF

45.  Plaintiffs, on behalf of themselves and all others similarly situated, pray for the following relief:

a.  A tax refund in the amount of $316,764.70 for the Employee Retention Credit for the following taxable period: Q1, Q2, and Q3 of 2021;

b.  Award reasonable attorneys' fees and costs, as allowed by law;

c.  Award pre-judgment and post-judgment interest, as allowed by law; and

d.  Award such further relief as the Court may deem just and proper.

Dated:        August 22, 2024

/s/ Rohit Nath
Rohit Nath

Justin A. Nelson*
Weston O'Black *
Daniel Wilson *
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
jnelson@susmangodfrey.com
woblack@susmangodfrey.com
dwilson@susmangodfrey.com

Rohit D. Nath
California Bar No. 316062
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone (310) 789-3100
Facsimile (310) 789-3150
rnath@susmangodfrey.com

PLAINTIFF'S ORIGINAL COMPLAINT

Matt Hartley *
Hartley Law PLLC
200 East Van Buren, Suite 300
Phoenix AZ 85004
Tel: 602.769.0999
matt.hartley@hartleylawusa.com

***Attorneys for Plaintiff***
***SW Media Holdings, Inc.***

*pro hac vice forthcoming*

PLAINTIFF'S ORIGINAL COMPLAINT